CHICAGO & NORTH WESTERN TRANSPORTATION COMPANY, Appellant, v. THORESON FOOD PRODUCTS, INC., Respondent.

*No. 630 (1974). Submitted on briefs January 7, 1976.—
Decided February 3, 1976.*
(Also reported in 238 N. W. 2d 69.)

144

For the appellant there was a brief by *Willard B. Techmeier* and *Borgelt, Powell, Peterson & Frauen,* all of Milwaukee.

For the respondent there was a brief by *Kaftan, Kaftan, Kaftan, Kuehne & Van Egern, S. C.,* and *Donald D. Miller,* of counsel, all of Green Bay.

BEILFUSS, J.   The basic issues are whether the Interstate Commerce Act precludes the defense of accord and satisfaction, and whether the plaintiff railroad carrier was estopped from pleading the statute of limitations.

The plaintiff is a foreign railroad corporation operating under and subject to the provisions of the Interstate Commerce Act.   The defendant is a domestic corporation engaged in the food products business.   The plaintiff has in the past transported commodities by rail to the defendant's place of business in Shawano.   In October, 1970, the plaintiff transported a carload of canned tomato products in car No. GARX 50908 from Santa Clara, California, to Shawano.   The total freight charge on that shipment was $1,758.96.   This charge is the subject of plaintiff's action.

Prior thereto, in January of 1970, the defendant was the consignee of a carload of canned goods, car No. NP 97519, transported by the plaintiff from Kansas City, Missouri, to Shawano.   The freight charges were prepaid on this shipment.   When the car arrived at Shawano on January 21, 1970, some of the contents were frozen. The defendant initially refused to accept the car because of the frozen lading.   However, following a telephone conversation with the plaintiff's claims representative, the defendant agreed to salvage as much of the shipment as possible.   The defendant claims it did so only upon the agent's assurance that the plaintiff would pay for the damaged goods.

The defendant submitted a claim of $1,369.37 to recover the loss.   The plaintiff denied the claim because of the shipper's failure to request heater service protection for the car.   That denial was reasserted in subsequent letters to the defendant.   On December 8, 1970, the defendant filed an informal complaint with the Interstate Commerce Commission relating to the plaintiff's failure to pay for the frozen lading.   The commission informed

the defendant by letter that it was without jurisdiction to determine the merits of the claim. It advised the defendant that its recourse was either to furnish additional evidence to the railroad or commence a court action.

Two other smaller claims by the defendant brought the total amount it claimed due from the plaintiff to $1,591.63. On January 5, 1971, the defendant sent a check in the amount of $167.33 to the plaintiff. The defendant's letter, which accompanied the check, indicated that the amount of the check represented the difference between the amount due the plaintiff as freight charges on the October shipment and the amount claimed by the defendant as damages in the prior shipments. The check itself bore a reference to the conflicting claims and a notation "[i]n settlement of the above account." The plaintiff cashed the check.

In its decision on the summary judgment motions, the trial court held that the defendant had a complete defense to the plaintiff's claim for freight charges on the October shipment. The court concluded that "the acceptance of the defendant's check by the plaintiff constituted an accord and satisfaction estopping the plaintiff from further claim against the defendant on that account."

As a generalization, it is the law of this state that when a party accepts, without objection, a check which he knows to be offered in full settlement of a disputed account, he is estopped from claiming in the future that the account has not been settled. The acceptance of the check constitutes a good accord and satisfaction.[1]

Here the parties disputed the validity of the defendant's claim for damages to the January, 1970, shipment.

[1] See: Lange v. Darling & Co. (1940), 233 Wis. 520, 526, 290 N. W. 188; Karp v. Coolview of Wisconsin, Inc. (1964), 25 Wis. 2d 299, 130 N. W. 2d 790; Olson v. Northwestern Furniture Co. (1959), 6 Wis. 2d 178, 94 N. W. 2d 179.

In an attempt to settle the matter, the defendant sent the plaintiff a check which represented the difference between the amount of its damage claim and the amount still owing the plaintiff as freight charges on the October, 1970, shipment. This intent was made clear both on the face of the check itself and by an accompanying letter. Without making an objection, the plaintiff cashed the check. The trial court determined that under the law of Wisconsin the parties had reached an accord and satisfaction on their conflicting claims.

The plaintiff contends that the law of this state cannot control the disposition of this case. It argues that the Interstate Commerce Act precludes the defense of accord and satisfaction in an action by a carrier to recover freight charges on interstate shipments. Sec. 6 (7) of that act requires that an interstate carrier file and publish its transportation rates and further provides that no carrier shall:

". . . charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith . . . ; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs." 49 USCA, p. 437.

The plaintiff contends that this section renders any agreement, implied or express, by a carrier to offset damage claims against freight charges null and void.

Controversies concerning rights and liabilities connected with interstate shipments are federal questions and state courts faced with such controversies must apply federal law.[2] The purpose of sec. 6 (7) of the Interstate

[2] *See: World Wide Meats, Inc. v. Chicago and North Western Transportation Co.* (D. C. Iowa, 1974), 383 Fed. Supp. 807; *Missouri Pacific Railroad Co. v. Elmore & Stahl* (1964), 377 U. S. 134, 84 Sup. Ct. 1142, 12 L. Ed. 2d 194.

Commerce Act is to secure equality of rates as to all and to destroy favoritism by requiring the publication of tariffs and prohibiting secret departures therefrom. Rebates, preferences and all other forms of undue discrimination are forbidden.[3] The published tariffs are equally binding on the carrier, the shipper and the consignee and cannot be changed by contract.[4]

The United States Supreme Court has concluded that sec. 6 (7) does not preclude a shipper from counterclaiming for damages in a carrier's action for transportation charges. *Chicago & Northwestern R. Co. v. Lindell* (1930), 281 U. S. 14, 50 Sup. Ct. 200, 74 L. Ed. 670. However, *Lindell* has been read as approving only judicially supervised setoffs and the defense of a private accord and satisfaction has been held invalid as against an action to collect freight charges. *See: In re Penn Central Transportation Co.* (C. A. 3d Cir. 1973), 477 Fed. 2d 841, 844, affirmed 414 U. S. 885, 94 Sup. Ct. 231, 38 L. Ed. 2d 137. The potential for effecting preferences under the guise of an agreement to set off claimed damages against freight charges is given as the primary reason for disallowing the defense. We therefore conclude that the trial court erred in holding that a valid defense of accord and satisfaction existed to the plaintiff's claim for freight charges.

The defendant seeks to support the trial court's order by pointing to an alleged agreement by the plaintiff's claims representative to pay for the frozen lading on the January shipment. It asserts that it accepted the ship-

[3] *See: New York, New Haven & Hartford R. Co. v. Interstate Commerce Commission* (1906), 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515; *Atchison, Topeka & Santa Fe R. Co. v. Bouziden* (C. A. 10th Cir. 1962), 307 Fed. 2d 230; *Chicago, B. & Q. R. Co. v. Ready Mixed Concrete Co.* (C. A. 8th Cir. 1973), 487 Fed. 2d 1263.

[4] *Louisville & Nashville R. Co. v. Central Iron & Coal Co.* (1924), 265 U. S. 59, 44 Sup. Ct. 441, 68 L. Ed. 900; *Alleghany Corporation v. Romco, Inc.* (D. C. Pa. 1975), 392 Fed. Supp. 38.

ment for salvage purposes only, and only after the agent had assured it that it would have no liability for the damaged lading. The defendant contends that its damage claim should therefore be set off against the plaintiff's claim for freight charges. The plaintiff denies that any such agreement was reached and further asserts that the company cannot be bound by its agent's erroneous statements.

The defendant relies on *Cedar Rapids Hide & Fur Co. v. Railway Express Agency, Inc.* (1951), 242 Iowa 412, 46 N. W. 2d 545. In that case the plaintiff consignee sought to recover from a carrier for damage to part of a shipment of muskrat skins caused by a delay enroute. The consignee had agreed to salvage the shipment upon the promise of the carrier's agent that the carrier would pay for the damaged skins. The Iowa court held that the Interstate Commerce Act did not prohibit a legitimate settlement of damages caused by carriers or arrangements made with a consignee to salvage property so damaged. Under the facts, the court concluded, the consignee's damage claim was not fabricated by the carrier in order to favor the shipper and was not, therefore, in violation of the act.

While the facts in the *Cedar Rapids Case* are similar to those in the case at bar, there is one important difference. That is, there was not involved in that case, as there is here, an attempt to assert the agreement as a defense to the carrier's action to recover for freight charges; it was an independent action to collect damages. The federal courts have consistently held that no act or omission on the part of a carrier will estop or preclude it from enforcing payment of amounts due under a lawful tariff.[5] The only permitted variation from the rule that a carrier must collect full fare in money is that a shipper,

---

[5] *Southern Pacific Co. v. Miller Abattoir Co.* (C. A. 3d Cir. 1972), 454 Fed. 2d 357; *Atchison, Topeka & Santa Fe R. Co. v. Bouziden, supra.*

when sued for such charges, may plead and prove, by way of counterclaim, any claim it may have for loss and damage. The subject matter of that counterclaim does not constitute a defense to the carrier's action but is an independent claim which must be asserted and proven as such.[6]

The rules of procedure in this state also, require that to obtain the benefits of a setoff the subject matter of the conflicting claim must be pleaded as a counterclaim. Sec. 263.14, Stats.[7] While the defendant has fully set forth the facts in support of its claim in its amended answer, they are pleaded in support of its affirmative defense of accord and satisfaction. No counterclaim has been pleaded.

While the order of the trial court granting the defendant's motion for summary judgment was erroneous under the applicable law and must therefore be reversed, it does not necessarily follow that this court must order that judgment be entered in favor of the plaintiff on its claim. The plaintiff railroad contends that judgment should be entered in its favor in the amount of $1,591.63 plus interest. This represents the difference between the amount of its original claim and the amount of the check sent by the defendant in settlement of the October and January accounts.

The plaintiff railroad argues that the defendant is now barred from counterclaiming for its damages on the January, 1970, shipment. The shipment was covered by the uniform straight bill of lading, which provides:

---

[6] See: In re Penn Central Transportation Co., supra; Southern Pacific Co. v. Miller Abattoir Co., supra.

[7] "263.14 Counterclaim. (1) A defendant may counterclaim any claim which he has against a plaintiff, upon which a judgment may be had in the action.

"(2) The counterclaim must be pleaded as such and the answer must demand the judgment to which the defendant supposes himself entitled upon his counterclaim.

"(3) This section does not extend to or include claims assigned to a defendant after he was served with the summons."

"Section 2 (b). As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within nine months after delivery of the property . . . or, in the case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suit shall be instituted against any carrier only within two years and one day from the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

This provision is authorized by the Carmack Amendment to the Interstate Commerce Act, 49 USCA, pp. 114–116, sec. 20 (11).[8] The plaintiff acknowledges that the defendant filed a written claim for the damage caused to the January shipment as required by the bill of lading. The plaintiff first denied that claim on March 2, 1970. The defendant has not commenced suit on the claim and, as the plaintiff points out, the time for doing so has expired. The plaintiff insists that the defendant is therefore barred from asserting its counterclaim in this action.

The defendant contends, however, that the plaintiff should be estopped to rely on the contractual period of limitations because it waited two years and 10 months to institute its own suit to recover the freight charges

[8] *"Liability of initial and delivering carrier for loss; limitation of liability; notice and filing of claim. . . . Provided further,* That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. . . ."

on the October, 1970, shipment. The plaintiff asserts that a carrier may neither waive nor be estopped to assert the requirements of the bill of lading because it would permit discrimination which is prohibited by the Interstate Commerce Act. The plaintiff also points out that under sec. 16 (3) of the act, a carrier has three years from the time of delivery to commence an action to recover freight charges. 49 USCA, pp. 41, 42, sec. 16 (3) ; *Baker v. Chamberlain Manufacturing Co.* (D. C. Ill. 1973), 356 Fed. Supp. 1314. Therefore the plaintiff's instant action was timely.

There is considerable authority for the proposition that a carrier may neither waive nor be estopped to assert the notice and limitation provisions of the bill of lading as they relate to damage claims.[9] The provisions in the bill of lading are considered an integral part of the uniform published tariff and regulations which the carrier may not waive or be estopped to assert.[10] This rule, once again, is intended to foster the purpose of the Interstate Commerce Act in securing equality of rates for all who deal with interstate carriers. Some courts have recognized that permitting the estoppel defense does not erode the purpose of the act in prohibiting discriminatory rates where the grounds for the estoppel do not serve directly or indirectly as a cover for such discrimination.[11]

The question is whether the use of estoppel will result in the defendant consignee being allowed to pay less than

[9] *See: B. A. Walterman Co. v. Pennsylvania R. Co.* (C. A. 6th Cir. 1961), 295 Fed. 2d 627; *Rhode Island Tool Co. v. New York, New Haven & Hartford R. Co.* (1955), 83 R. I. 201, 114 Atl. 2d 404.

[10] *See: Loveless v. Universal Carloading & Distributing Co.* (C. A. 10th Cir. 1955), 225 Fed. 2d 637.

[11] *See, e.g.: Southern Pacific Transportation Co. v. Campbell Soup Co.* (8th Cir. 1972), 455 Fed. 2d 1219; *Missouri Pacific R. Co. v. National Milling Co.* (D. C. N. J. 1967), 276 Fed. Supp. 367, affirmed (C. A. 3d Cir. 1969), 409 Fed. 2d 882.

the published rate for the shipments here involved.[12] There is no question that this result cannot obtain with respect to the January, 1970, shipment, since the charges on that shipment were prepaid. Neither will the forbidden result occur with respect to the October, 1970, shipment. By ruling out the asserted defense of accord and satisfaction, the plaintiff is assured of recovering a judgment for the full freight charges owing on that shipment. Permitting the estoppel defense with respect to the limitation provision in the bill of lading will only serve to allow the defendant to assert its counterclaim for damages to the January shipment. This it is entitled to do in response to any claim by a carrier for freight charges. *Chicago & Northwestern R. Co. v. Lindell, supra.*

The question remains, however, as to whether the defendant's asserted estoppel defense is supported by the record. The defense of equitable estoppel consists of action or nonaction which, on the part of the one against whom the estoppel is asserted, induces reliance thereon by another, either action or nonaction, to his detriment. *See: Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 138 N. W. 2d 238; *Dunn v. Pertzsch Construction Co.* (1968), 38 Wis. 2d 433, 157 N. W. 2d 652. A summary of the defendant's position is that the plaintiff, either itself or through its agent, led the defendant to believe that the damage claim would be honored, waited until the consignee's limitation period on that claim expired, and then commenced suit to recover the charges on the October shipment, secure in the belief that no counterclaim for the damages could be successfully asserted.

The validity of the defendant's position must rest, initially, upon a determination of what was, in fact, said

---

[12] *See: Union Pacific Railroad Co. v. Stadelman Fruit, Inc.* (1975), 13 Wash. App. 824, 537 Pac. 2d 1076; *Chicago, B. & Q. R. Co. v. Ready Mixed Concrete Co., supra.*

by the plaintiff's agent at the time the January shipment was delivered. The defendant claims it accepted the shipment for salvage purposes only upon the agent's assurance that the plaintiff would honor its damage claim. The plaintiff denies that such a promise was made. This issue, of course, is one of fact which this court cannot resolve on this appeal.

Even assuming that such a promise was made, however, there is other undisputed evidence of record which would compel a finding, as a matter of law, that the required elements of the estoppel defense are not established. It is the general rule that a party's reliance on the conduct or words of another must be reasonable.[13] While the defendant might initially have been justified in believing that the claim would be paid without suit, subsequent developments should reasonably have alerted it to the necessity of relying on its rights to action afforded by the Interstate Commerce Act and governed by the provisions of the bill of lading.

First, it must be pointed out that the defendant, pursuant to the requirements of the bill of lading, filed a written claim for its damages. Concededly, this is not inconsistent with a belief that the claim would be honored. However, the defendant should have been alerted to problems in this regard when that claim was denied. While it appears that the defendant continued to assert its claim, it is also clear from the record that the plaintiff adhered to its denial. In addition, the Interstate Commerce Commission, in response to the defendant's informal complaint, advised the defendant that "your recourse would be to furnish additional evidence to establish carrier liability or to enter a suit in the courts." The commission's letter was dated February 1, 1971, well within the two-year and one-day limitation on damage

---

[13] *Risdon, Inc. v. Miller Distributing Co.* (1966), 29 Wis. 2d 418, 139 N. W. 2d 12; 28 Am. Jur. 2d, *Estoppel and Waiver*, pp. 710–712, sec. 76.

claims set forth in the bill of lading. Finally, the defendant was well aware of the plaintiff's position that it was not bound by any promises made by the agent. Parties to a bill of lading are held to know its provisions and the defendant cannot therefore claim ignorance of the limitation period.[14]

In summary, we hold the defense of accord and satisfaction is invalid as against an action by an interstate carrier to recover freight charges. Damage claims may be asserted as independent counterclaims in such an action. However, damage claims must be asserted within the limitation period set forth in the bill of lading covering the damaged shipment. While a carrier may be estopped to assert this limitation period where the ground for estoppel will not serve to cover for a prohibited discrimination in rates, the facts must establish the required elements of the estoppel. In this case the facts cannot support a conclusion that the defendant justifiably relied on a promise to pay the damage claim to the extent that it neglected to commence a suit to recover on that claim before the contractual limitation period expired. It follows the defendant's counterclaim is barred. While this result may seem harsh, it is the strictly construed federal law designed to prohibit rate discrimination in any form that must prevail.

*By the Court.*—Judgment reversed and remanded with directions to grant the plaintiff's motion for summary judgment.

[14] *Michigan Central R. Co. v. Mark Owen & Co.* (1921), 256 U. S. 427, 41 Sup. Ct. 554, 65 L. Ed. 1032; *B. A. Walterman Co. v. Pennsylvania R. Co., supra.*