G.M.W., INC., Plaintiff-Respondent,

v.

CERTIFIED PARTS CORPORATION,
Defendant-Appellant.†

Court of Appeals

*No. 86–1086. Submitted on briefs September 8, 1986.—Decided
December 18, 1986.*

(Also reported in 400 N.W.2d 512.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Richard E. Rosenberg* and *Nowlan & Mouat* of Janesville.

For the plaintiff-respondent the cause was submitted on the brief of *Harry N. Loeb* and *Loeb & Ching, S.C.* of Madison, and *Louis J. Wade* and *Culp, Strus & Wade,* of Kansas City, MO.

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J. Certified Parts Corporation appeals from a judgment granting a motion for summary judgment. The issue is whether a shipper may raise an equitable defense to the collection of an undercharge by a motor common carrier on rates filed by the carrier with the Interstate Commerce Commission. Because we conclude that a shipper may not do so, we affirm.

The trustee in bankruptcy of G.M.W., a motor common carrier, sued to collect undercharges on shipments made by Certified. As an affirmative defense, Certified alleged that it orally agreed with G.M.W. to ship its inventory on G.M.W. semitrailers for $400 a load, and that it paid this rate for all loads shipped.

At the time of the agreement G.M.W.'s filed tariff rates were substantially higher than $400 per load. G.M.W. did not file the $400 per load rate with the ICC until after it completed its work for Certified. The trustee audited G.M.W.'s freight bills, determined that prior to August 16, 1982, G.M.W. undercharged Certified $9,411.26, and began this action to collect the undercharges. The circuit court granted summary judgment in favor of G.M.W.

504

In *In re Cherokee Park Plat*, 113 Wis. 2d 112, 334 N.W.2d 580 (Ct. App. 1983), we considered the standard of review in summary judgment proceedings.

> Under the methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint ... states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment .... If the moving party has made a prima facie case for summary judgment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary. ...
>
> The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment. [Citations omitted.]

*Id.* at 116, 334 N.W.2d at 582–83.

Federal statute prohibits motor common carriers from charging rates different from those recorded with the ICC. 49 U.S.C. sec. 10761(a) (1982). Motor common carriers may collect undercharges on rate tariffs filed with the ICC. *Louis. & Nash. R.R. Co. v. Maxwell*, 237 U.S. 94, 97 (1915). G.M.W.'s complaint sufficiently alleges that Certified failed to pay money owed to G.M.W. under the filed tariff. Certified's answer admits the undercharges but alleges a contract for a charge less than the amount of the tariff.

505

The existence of a contract inconsistent with a filed ICC tariff and the carrier's intentional or negligent failure to file the contracted rate with the ICC are not relevant. Equitable defenses are not available to shippers faced with undercharge collection actions brought by common carriers. *Maxwell*, 237 U.S. at 97. Certified contends, however, that changes in the statutes, court opinions and ICC orders have effectively overruled this longstanding doctrine.

Certified argues that 49 U.S.C. sec. 10101 (1982), by providing for competition and flexible pricing, should be interpreted as allowing shippers to raise equitable defenses when they are subject to actions by carriers to collect filed tariff undercharges. Certified relies on *Seaboard System R.R., Inc. v. United States*, 794 F.2d 635 (11th Cir. 1986). In *Seaboard* a railroad sued to collect undercharges based on a higher single car rate from a shipper who was promised and had received a lower multicar rate from the railroad. Both rates were filed with the ICC, but the higher rate applied to single car loads. The two rates were listed adjacent to each other in the ICC tariffs. *Id.* at 636-37. The action was stayed pending an ICC determination of the reasonableness of enforcing the higher rate. *Id.* at 639. The ICC concluded that the higher rate was unambiguously recorded. However, the printing of the rate

> even if not technically ambiguous, lent itself to misinterpretation by the ordinary user [here the shipper], and the shipper relied on [the railroad's] continued misquotations and misbillings, to the shipper's substantial detriment.

*Id.* at 637. Thus, when the shipper examined the ICC tariffs, the confusing printing in combination with the carrier's misrepresentations led the shipper to believe

that the lower rate was properly filed and applicable to the contested transaction. The ICC allowed the shipper to escape liability for the undercharges. The ICC claimed authority to prevent unreasonable practices under 49 U.S.C. sec. 10701(a) which prohibits unreasonable practices by all carriers subject to the Interstate Commerce Act and 49 U.S.C. sec. 10704(a)(1) which authorizes the ICC to order carriers to stop violations. The eleventh circuit upheld the ICC's decision, reasoning that "finding a carrier practice unreasonable is the kind of determination that lies in the primary jurisdiction of the Commission." *Id.* at 637–38.

In *Maxwell*, the Supreme Court distinguished cases before the ICC from those before courts. The rule in actions before courts continues to be:

> [T]he rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, *unless it is found by the Commission to be unreasonable.* Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination. [Emphasis added.]

*Maxwell*, 237 U.S. at 97. "The reasonableness of practice, however, is exclusively within the jurisdiction of the Interstate Commerce Commission, and cannot be addressed to this Court." *G.M.W. Inc. v. Flambeau Paper Corp.*, 623 F. Supp. 473, 476 (W.D. Wis.

1985).[1] The ICC has the power to, in effect, excise unreasonable provisions from a tariff, thus permitting a court to compare the tariff, as changed by the ICC, with the rate charged by the shipper, *Western Transp. Co. v. Wilson and Co., Inc.*, 682 F.2d 1227, 1231–32 (7th Cir. 1982). In *Wilson*, a condition of the tariff was a notation on the bill of lading that the shipper and consignor must load the freight, a pointless requirement when the reason for the tariff was that the carrier be spared the expense of loading and unloading. Here, we are faced with a shipper contracting for a rate other than the filed rate. *Wilson* is inapplicable to the facts of this case.

In *Square D Co. v. Niagara Frontier Tariff Bur.*, 476 U.S. —, 90 L.Ed. 2d 413 (1986), the Supreme Court reaffirmed a 1922 ruling that a treble damage antitrust action could not be brought by shippers asserting that carriers conspired to fix rates when those rates were properly filed with the ICC. "The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier." *Id.* at—, 90 L.Ed. 2d at 421, quoting *Keogh v. C. & N.W.Ry. Co.*, 260 U.S. 156, 163 (1922).

The filed tariff doctrine was recognized in Wisconsin in *Chicago & N.W. Tr. Co. v. Thoreson Food Prod.*, 71 Wis. 2d 143, 147–48, 238 N.W.2d 69, 72 (1976). Certi-

---

[1] The ICC has recently offered to make an advisory analysis of whether collection of a negotiated but unpublished rate constitutes an unreasonable practice. *National Industrial Transportation League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates*, ICC Ex Parte No. MC-177 at 8 (October 14, 1986). Because the ICC made no finding of unreasonableness in this case, their recent *ex parte* order is not applicable here. We therefore do not consider whether the ICC's authority extends to giving advisory opinions to state courts, and whether, had the ICC made an advisory analysis in this case, the result would be different.

fied argues that we should depart from this precedent. We will not do so. In *State ex rel. Swan v. Elections Bd.*, 133 Wis. 2d 87, 93–94, 394 N.W.2d 732, 735 (1986), the court said:

> Looking to our constitutional structure, it is apparent the supreme court is intended to have a different function from that of the court of appeals. The court of appeals is intended to be a high-volume, error-correcting court, having a close relationship to the circuit courts in respect to the superintending control of circuit court functions. On the other hand, this court, under our constitutional structure, is intended to make final determinations affecting state law, to supervise the development of the common law, and to assure uniformity of precedent throughout the state. The supreme court is primarily concerned with the institutional functions of our judicial system, while the court of appeals is charged primarily with error correcting in the individual case.

Given the function assigned to this court, we will not consider Certified's invitation. Moreover, we are prohibited from doing so. *State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

The concurrence would adopt a broad rule permitting courts, in concert with the ICC, to circumvent an act of Congress. Courts are not free to do this. The ICC, as it recognizes, is also not free to do this. National Industrial Transportation League—*Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates*, ICC Ex Parte No. MC–177 at 3 (October 14, 1986). *Wilson* addresses the significant reasons why Congress adopted the "filed tariff" doctrine, and holds that under the unique facts of that case, the ICC could find part of a tariff unreasonable, and therefore unenforceable. It is another matter altogether to suggest that

any tariff can be an "unreasonable practice." Such a suggestion raises questions of separation of powers, an issue not raised or argued here.

■

G.M.W. alleged proper tariffs recorded with the ICC and the proper amounts owed by Certified under these tariffs. It properly allowed credit for Certified's prior payments. G.M.W. established a *prima facie* case for recovery. Certified's pleadings do not rebut the existence of money owed on undercharges. The trial court therefore properly granted G.M.W.'s motion for summary judgment.

*By the Court.*—Judgment affirmed.

SUNDBY, J. (*concurring.*) I do not agree with the majority opinion that equitable defenses are not available to shippers faced with undercharge collection actions brought by common carriers. That conclusion is not supported by *Square D Co. v. Niagara Frontier Tariff Bur.*, 476 U.S. —, 90 L.Ed. 2d 413 (1986) or *Chicago & N.W. Tr. Co. v. Thoreson Food Prod.*, 71 Wis. 2d 143, 147-48, 238 N.W.2d 69, 72 (1976).

On October 14, 1986 the ICC adopted the following policy statement effective November 29, 1986:

> The Commission has adopted a policy statement holding that, in the post-Motor Carrier Act of 1980 environment, the filed rate doctrine does not necessarily bar equitable defenses. Where an undercharge claim is filed by a carrier in court based on a tariff rate and the shipper claims that a lower, negotiated but unpublished rate was understood, if the court refers the case to the Commission for determination of the availability of equitable relief, the Commission will decide whether, under all the relevant circumstances, collection of the undercharges would be an

unreasonable practice. A proposal to adopt a rule declaring a negotiated (but unpublished) motor carrier rate to be the maximum reasonable rate "if the shipper acted with a good faith belief that the negotiated rate was the legally applicable rate" is denied.

*National Industrial Transportation League—Petition to Institute Rulemaking on Negotiated Motor Common Carriers Rates*, ICC Ex Parte No. MC-177 (October 14, 1986).

In its decision, the Commission stated:

> In short, we offer to undertake an advisory analysis of whether a negotiated but unpublished rate existed, the circumstances surrounding assessment of the tariff rate, and any other pertinent facts. We would, at a court's request, determine, based on all relevant circumstances, whether collection of undercharges based on the rate contained in the filed tariff would constitute an unreasonable practice and, if a negotiated rate is found to exist, whether this amount is all a carrier should be permitted to collect. The referring court would retain final authority to set the remedy, if any, and review our determination. [Footnote omitted.]

*Id.* at 8.

The Commission also stated in its decision:

> The question that we are addressing here is whether a shipper must pay the rate established in a tariff where a motor common carrier has negotiated a lower rate and has indicated that the negotiated rate would be the one charged (and therefore presumably filed as a tariff). We believe, in the highly competitive motor carrier industry and economy in general, equitable defenses to rigid application of filed tariff rates should be available on a case-by-case basis and

511

that our unreasonable practice jurisdiction authorizes such an approach. [Footnote omitted.]

*Id.* at 6-7.

The Commission pointed out that neither *Square D, supra,* nor *Regular Common Carrier Conference v. United States,* 793 F.2d 376 (D.C. Cir. 1986), holds that the Commission is precluded from passing on the reasonableness of carrier practices pursuant to its express statutory authority in 49 U.S.C. sec. 10701(a). ICC Ex Parte No. MC-177 at 8. The Commission further pointed out that insofar as *Square D* reaffirmed that carriers must *file* their rates does not mean that the Commission lacks authority to find in a particular case, that allowing a carrier to *collect* the tariff rate would be unreasonable. *Id.* Thus, the Commission stated it was not abolishing the requirement of 49 U.S.C. sec. 10761 which precludes a carrier from charging or receiving a different compensation for providing transportation than the rate specified in the tariff. *Id.*

The effect of our decision today is that even if the ICC determines that collection of undercharges constitutes an unreasonable practice, and that the negotiated amount is all that the carrier should be permitted to collect, the courts are powerless to give any effect to such a determination.[1] The federal courts do not see themselves as powerless in such a situation. As the seventh circuit stated in *Western Transp. Co. v. Wilson and*

---

[1] The majority opinion states that courts are not free "in concert with the ICC" to "circumvent an act of Congress" by refusing to enforce an unreasonable tariff. In its footnote, however, the opinion states: "We therefore do not consider whether the ICC's authority extends to giving advisory opinions to state courts, and whether, had the ICC made an advisory analysis in this case, the result would be different." The majority opinion is contradictory.

*Co., Inc.*, 682 F.2d 1227, 1231 (7th Cir. 1982): "A tariff provision has to be reasonable. *See* 49 U.S.C. sec. 10704(a). If it is not, it violates the statute . . . . " It is well settled that a contract made in violation of a valid statute is void, although the statute does not expressly so declare. *Urwan v. Northwestern Nat. Life Ins. Co.*, 125 Wis. 349, 359, 103 N.W. 1102, 1105 (1905).

I do not believe the state courts are powerless to entertain an equitable defense by a shipper based upon a determination by the ICC that collection of undercharges in a particular case constitutes an unreasonable practice.[2] If the federal courts have the power to entertain equitable defenses in such cases, so do the state courts. "Controversies concerning rights and liabilities connected with interstate shipments are federal questions and state courts faced with such controversies must apply federal law." *Thoreson Food Prod.*, 71 Wis. 2d at 147, 238 N.W.2d at 72.

The majority opinion deals extensively with *Seaboard System R.R., Inc. v. United States*, 794 F.2d 635 (11th Cir. 1986), as it must, since that decision supports the power of the ICC to find a carrier practice respecting collection of undercharges unreasonable. I agree with the majority opinion's conclusion that the reasonableness of a practice is exclusively within the jurisdiction of the ICC. *G.M.W., Inc. v. Flambeau Paper Corp.*,

---

[2] Contrary to the majority opinion's assertion, I do not suggest that "any tariff" can be an unreasonable practice. I suspect that shippers who invoke the jurisdiction of the ICC will be disappointed to discover that obtaining a finding that collection of a filed tariff is an unreasonable practice involves more than simply showing an agreement to charge a lower rate. However, when such a finding is made, I believe the courts may entertain an equitable defense based on that finding.

623 F. Supp. 473, 476 (W.D. Wis. 1985).[3] Thus, neither the federal courts nor the state courts can determine the reasonableness of a practice of a common carrier. It does not follow, however, that the courts cannot refuse to enforce a practice found by the ICC to be unreasonable. I agree with the majority opinion that Certified Parts Corporation, in this action, may not raise an equitable defense to the collection of the undercharge for which G.M.W. sues but only because the ICC has not found that the collection of the undercharge is an unreasonable practice.

---

[3] In *G.M.W., Inc.* the court referred to the ICC for determination the shipper's complaint that G.M.W., Inc. was engaged in an unreasonable collection practice. Its order stated: "IT IS ORDERED that this case is transferred to the Interstate Commerce Commission for its determination as to whether the practice of G.M.W., Inc. is unreasonable *to the extent that undercharges will not be allowed recovery.*" (Emphasis added.) *Id.*, 623 F. Supp. at 478.