**In re TAYNTON FREIGHT SYSTEMS, INC., Debtor.**

**TAYNTON FREIGHT SYSTEMS, INC. and Delta Traffic Service, Inc., Plaintiff,**

v.

**TRIPAR TRANSPORTATION, INC., Defendant.**

Bankruptcy No. 5–85–00167.
Adv. No. 5–87–0080.

United States Bankruptcy Court, M.D. Pennsylvania.

Aug. 14, 1987.

Joseph L. Steinfeld, Jr., Washington, D.C., for Delta Traffic.

Edward H. Owlett, III, Wellsboro, Pa., for Taynton.

M.J. Leavitt, Northville, Mi., for defendant Tripar.

**OPINION AND ORDER**

THOMAS C. GIBBONS, Bankruptcy Judge:

Tripar Transportation, Inc. (hereinafter "Tripar") commenced this action seeking to refer certain issues presented in plain-

tiffs'[1] Complaint to Recover Freight Charges to the Interstate Commerce Commission (hereinafter the ICC) under the doctrine of primary jurisdiction.

The record in the present case reveals that Taynton filed a bankruptcy petition on March 29, 1985. On March 11, 1987, the Bankruptcy Court approved the retention of Delta, whose duties included collection activities pursuant to a letter of agreement dated June 28, 1985. On March 27, 1987 Taynton and Delta filed a complaint against Tripar to recover freight charges. On June 5, 1987, Tripar filed an answer to plaintiffs' complaint. Additionally, on June 5, 1987, Tripar filed a motion and supporting brief asking that we refer certain issues in plaintiffs' complaint to recover freight charges to the ICC. On June 16, 1987, plaintiffs, who are respondents in this proceeding, filed a brief in reply to defendant/movant's motion for reference of issues to the ICC.

After reviewing the record in the present case we make the following findings of fact.[2]

1. In an Order dated April 1, 1985, the bankruptcy court authorized Taynton to operate and manage its affairs in the ordinary course of business subject to the provisions of the Bankruptcy Code.

2. Plaintiffs' complaint indicates that on June 28, 1985, Taynton, with the approval of its official Committee of Unsecured Creditors, entered into a letter agreement with Delta, whereby Delta would collect the accounts receivable referred to it by Taynton's management. Additionally, it is averred that Delta would audit Taynton's freight bills issued three (3) years prior to March 29, 1985, for the purpose of determining whether or not said freight bills had been properly rated according to the tariffs filed by Taynton with the ICC. Plaintiffs' complaint also indicates that if there were any balances due under the freight bills because of improper tariff charges, Delta would bill and collect said charges through counsel of its choice.

3. In an order dated March 11, 1987, the Bankruptcy Court approved the retention of Delta and the retention of Joseph L. Steinfeld, Jr., as special counsel for Taynton.

4. Plaintiffs have also averred that Tripar tendered freight to Taynton for transportation in interstate commerce. It is also averred that Taynton accepted the freight and performed transportation services pursuant to the authority issued to Taynton by the ICC and by the tariff rates and rules provisions Taynton had filed with the ICC at the time the shipments were handled.

5. Plaintiffs' complaint indicates that Delta audited all of the shipments handled by Taynton for Tripar by comparing the commodities, weights, points of origin, destination, and declared value of each shipment to the applicable tariff rate and rules provisions that Taynton had on file with the ICC and which were effective on the date of shipment. Consequently, Delta and Taynton have alleged that there are balance due invoices of approximately $64,867.32.

6. Further, plaintiffs allege in their complaint that Delta has made through its motor carrier audit and collection division repeated demands upon Tripar for the payment of $64,867.32, which Tripar has refused to pay.

## DISCUSSION

In addressing this proceeding, we are asked to determine whether certain issues presented in plaintiffs' complaint to recover freight charges should be referred to the ICC under the doctrine of primary jurisdiction.

"The doctrine of primary jurisdiction ... is concerned with promoting proper relationships between the courts and the administrative agencies charged with particular regulatory duties." *United States v. Yellow Freight System, Inc.*, 762 F.2d 737, 739 (9th Cir.1985) quoting *United*

1. Plaintiffs are also referred to in this Opinion as Taynton and Delta.

2. This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

*States v. Western Pacific Railroad,* 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). "The doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body." *Farley Transportation Company, Inc. v. Sante Fe Trail Transportation Company, Inc.,* 778 F.2d 1365, 1370 (9th Cir.1985) citing *United States v. Western Pacific,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). The primary jurisdiction doctrine requires that the judicial process be suspended pending referral of certain issues to an administrative body for its views. *Id.* No fixed formula exists for applying the doctrine of primary jurisdiction. *Id.* "[E]ach case must be examined on its own facts to determine 'if the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by application in the particular litigation.'" *Farley Transportation Company v. Sante Fe Transportation Company, supra* at 1370.

■ The doctrine of primary jurisdiction requires the ICC to be the first to construe a tariff if construction of the tariff raises issues of transportation policy that require a uniform and expert administration of the regulatory scheme set forth by the Interstate Commerce Act. *Western Pacific Railroad, supra; Farley Transportation Company, Inc., supra.* The doctrine is not applicable if the ICC has already construed a particular tariff or explained its underlying factors or if the tariff's language is used in its ordinary sense. *Farley Transportation Company, Inc., supra.* Therefore, the doctrine applies when the resolution of issues requires consideration of cost allocations or interpretations of previously undefined technical terms. *Id.*

■ In this instance Tripar does not argue that a certain tariff is facially unreasonable or that its language is not used in the ordinary sense. Rather, our inquiry concerns the type of movement handled by Taynton on behalf of Tripar and which tariff rates should be applied to the transportation services performed by Taynton. This case does not raise issues involving transportation policy or the unreasonableness of a tariff rate to be applied to a particular transportation service. The doctrine of primary jurisdiction is simply not implicated under these circumstances. See *Motor Carrier Audit and Collection Company v. United Food Service, Inc.,* No. 87–C–298 (D.Col.1987); *I.C.C. v. J.B. Montgomery, Inc.,* 483 F.Supp. 279 (D.Colo. 1980). Additionally, even if we were to refer certain issues to the ICC, the Bankruptcy Court retains its authority to set the remedy and accept or reject the ICC's conclusions. After reviewing the facts presented in this case, it is evident that this case does not involve issues reserved for the special competence of an administrative body and that the Bankruptcy Court must ultimately be the arbitor of this case. Thus, we find that referral of this case to the ICC would involve an unnecessary delay in the resolution of this adversary proceeding.[3]

## CONCLUSIONS OF LAW

The issues which movant seeks to refer to the ICC are not reserved for the special competence of the ICC and the Bankruptcy Court must ultimately be the arbitor of this case. Therefore, we cannot refer the issues involved in this case to the ICC.

## ORDER

AND NOW, at Wilkes-Barre, this 14th day of August, 1987, it is hereby

ORDERED that defendant, Tripar Transportation, Inc.'s request to refer certain issues presented in plaintiffs' complaint to recover freight charges to the Interstate Commerce Commission is hereby dismissed.

---

**3.** Additionally, we recognize the longstanding doctrine that equitable defenses are not available to shippers faced with uncharged collection actions brought by common carriers. *G.M.W., Inc. v. Certified Parts Corporation,* 135 Wis.2d 503, 400 N.W.2d 512, Fed.Carr.Reg. [CCH ¶ 83,-302 (C.T.App.1986) ].