**INF, LTD., Plaintiff,**

v.

**SPECTRO ALLOYS CORP., Defendant.**

**No. Civil 4–86–705.**

United States District Court,
D. Minnesota,
Fourth Division.

July 8, 1988.

Corp. (Spectro) to refer this case to the Interstate Commerce Commission (ICC) to determine whether it would be an unreasonable practice to require Spectro to pay "undercharges" for the difference between the tariff rate that the parties believed was appropriate and the tariff rate that INF now says is correct. 651 F.Supp. 1405 (D.Minn.1987). In a decision issued on February 23, 1988, the ICC, by a 3–2 vote, determined that it would be an unreasonable practice. *INF, Ltd.—Petition for Declaratory Order (No. MC–C–30041)*, 1988 ICC LEXIS 23 (Feb. 23, 1988). Defendant Spectro now moves for summary judgment on the ground that the ICC's decision establishes the validity of its equitable defenses. Plaintiff has filed a cross-motion for summary judgment.

Plaintiff INF, Ltd. (INF) was formerly in the freight handling business. Defendant Spectro manufactures and distributes metal products. It appears that INF solicited business from Spectro and quoted an "iron and steel" tariff for the shipment of Spectro's aluminum commodities. During 1983 and 1984, INF made 124 shipments for Spectro, for which Spectro paid the "iron and steel" rate. In December 1984, INF's parent corporation filed a Chapter 11 reorganization and auditors concluded that INF had charged Spectro the wrong rate. INF now claims that the correct rate was the "freight, all kinds" tariff and that Spectro was undercharged by $22,460.70.[1]

In granting defendant's motion to refer this case to the ICC, the court noted "the ICC's intention to broaden the use of its authority to determine what is 'reasonable' "[2] and expressed concern with " 'promoting proper relationships between the

Paul O. Taylor, Minneapolis, Minn., for plaintiff.

James R. Scoggin, Harvey, Thorfinnson & Scoggin, Eden Prairie, Minn., for defendant.

## MEMORANDUM OPINION AND ORDER

DIANA E. MURPHY, District Judge.

On January 30, 1987, the court granted the motion of defendant Spectro Alloys

---

1. INF now concedes that approximately $5000 of the undercharges are barred by the statute of limitations established by 49 U.S.C. § 11706. Plaintiff's Memorandum at 1 n. 1. At the hearing, the parties stated that they would be able to agree upon the exact amount of undercharges barred.

2. Most importantly, the court noted the ICC's decision in *National Indus. Transp. League (NITL)—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates (Ex Parte No. MC–177)*, 1986 Fed.Carr.Cas. (CCH) para. 37,284 (1986) (hereafter *Ex Parte No. MC–177*). There, the ICC announced a major policy change by deciding that the "filed rate" doctrine does not necessarily bar equitable defenses where a negotiated but unpublished rate was agreed upon. That doctrine, discussed *infra*, requires carriers to charge and shippers to pay the exact charges set forth in the published tariffs, with no deviation allowed.

courts and administrative agencies.'" 651 F.Supp. at 1407 (quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956)). The issue of referral arose, the court stated, "in the context of [a] changing legislative and regulatory scheme." *Id.* at 1407–08.

The ICC determined that INF's quotation of the "iron and steel" rate should preclude its collection of the alleged undercharges. It found that Spectro reasonably relied upon INF's quotation of the tariff and concluded that it would be an unreasonable practice to require Spectro to pay the difference between the rates at this time. Chairman Gradison and Commissioner Simmons dissented, finding that Spectro's reliance was not reasonable.

Defendant Spectro contends that it is now entitled to summary judgment in view of the ICC's decision because "there is no longer any valid claim for INF to pursue." Defendant's Memorandum at 6. Plaintiff INF argues that the ICC had no authority to render an opinion waiving undercharges. It relies upon the dissenting opinions issued by the two Commissioners.

Referral to the ICC under these circumstances allowed the record to be developed fully by permitting the ICC to express its view on the issues in question. Nevertheless, after giving thorough consideration to the ICC's decision, the court determines that it remains bound by the "filed rate" doctrine established by Congress [3] and the Supreme Court. In *Louisville & Nashville R.R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915), the Court explained that reliance on a carrier's misquotation of price does not excuse the purchaser from paying the correct rate:

Deviation from [the applicable rate] is not permitted upon any pretext. ... Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*See also Paulson v. Greyhound Lines, Inc.*, 804 F.2d 506, 507 (8th Cir.1986) ("[*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986),] recently reaffirmed the overriding nature of the tariff in relationships between shippers and carriers."). Neither Congress nor any federal court has seen fit to mitigate the sometimes harsh effects of the filed rate doctrine by allowing equitable defenses.[4] Accordingly, this court must strictly apply the filed rate doctrine and disallow Spectro's equitable defenses, despite the ICC's decision.[5]

In referring the case to the ICC, the court noted *Seaboard System R.R., Inc. v. United States*, 794 F.2d 635 (11th Cir.1986). There, the Eleventh Circuit held that the ICC had the authority to consider whether

---

**3.** 49 U.S.C. § 10761(a) provides in part:

[A] carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

Congress also provided criminal penalties for departures from filed rates. 49 U.S.C. § 11903.

**4.** The only authority cited by defendant for the proposition that courts may consider equitable defenses after an ICC finding of unreasonableness on referral is dicta contained in a concurring opinion in a state intermediate appellate court decision. *See G.M.W., Inc. v. Certified Parts Corp.*, 135 Wis.2d 503, 400 N.W.2d 512, 515 (1986) (Sundby, J., concurring). Plaintiff also cites *Iowa Beef Processors, Inc. v. Illinois Cent. Gulf R.R. Co.*, 685 F.2d 255 (8th Cir.1982), and *Western Transp. Co. v. Wilson & Co.*, 682 F.2d 1227 (7th Cir.1982), but neither case addresses the issue of equitable defenses. Divergence from *Maxwell*, a 73–year–old Supreme Court decision, cannot be justified on the basis of such authority.

**5.** In *Ex Parte No. MC–177*, the ICC recognized that its determinations would be "advisory" in this context and noted that "[t]he referring court would retain final authority to set the remedy, if any, and review our determination."

it would be an unreasonable practice for the carrier in question to collect undercharges. However, *Seaboard* was careful to distinguish between consideration of equitable defenses by the ICC and consideration of such defenses by the courts:

> The Commission's action in this case is both justified and within its jurisdiction. It is not contrary to *Maxwell* and related cases, as those dealt only with the *courts'* authority to grant equitable defenses to undercharge actions.

*Id.* at 638 (emphasis in original). Moreover, *Seaboard* did not concern a referral from a court but rather arose from an administrative complaint filed directly with the ICC. *Seaboard* does not stand for the proposition that a *court* may consider an equitable defense to an action seeking collection of undercharges.[6]

Even if the court were inclined to depart from strict application of the filed rate doctrine, the circumstances of this case would not warrant such a departure. The ICC's decision was issued by a divided Commission, with three Commissioners joining in the decision while two others dissented. Chairman Gradison found that defendant did not reasonably rely upon plaintiff's representations, stating that "[t]here is no reasonable argument that an iron and steel tariff applies to aluminum articles." Commissioner Simmons also dissented and similarly found that any reliance by defendant was not reasonable. Furthermore, Commissioner Simmons added that the *Ex Parte No. MC–177* decision was intended to apply only where a negoti-

ated and unpublished rate was used. By contrast, this case allegedly involved an incorrect published rate. Departure from the historically established filed rate doctrine should not be premised on such a closely divided administrative decision in this fluctuating area of law.[7]

It is now undisputed that the "freight, all kinds" tariff was applicable to the shipments. Since defendant may not assert equitable defenses and because no disputed issue of material fact remains, plaintiff is entitled to judgment as a matter of law. Its motion for summary judgment should therefore be granted.

Accordingly, based upon the above, and all the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment is denied.

2. Plaintiff's motion for summary judgment is granted.

3. The parties shall notify the court as to the amount plaintiff is entitled to recover by July 26, 1988.

---

**6.** There are several recent court decisions of interest on this point. Some courts that previously referred cases to the ICC have called into doubt the propriety of those referrals. *See, e.g., Observer Transp. Co. v. Service Merchandise Co.,* 685 F.Supp. 120 (W.D.N.C.1988); *Delta Traffic Serv., Inc. v. E.L. Mustee & Sons,* No. C87–1726 (May 12, 1988) (vacating earlier order referring case to ICC). Others have declined to refer cases to the ICC. *See, e.g., Miller v. Armour & Co. (In re Total Transp., Inc.),* 84 B.R. 590, 598 (D.Minn.1988) (MacLaughlin, J.) ("[B]ecause [the court] is bound by both statute and Supreme Court precedent to apply the filed rate

doctrine it would be unable to accept any advisory opinion by the ICC that a shipper be permitted to avoid the filed rate doctrine through the assertion of equitable defenses.").

**7.** The ICC is continuing to refine its policy announced in *Ex Parte No. MC–177. See NITL— Petition for a Declaratory Order on Negotiated Motor Common Carrier Rates (No. MC–C–30090),* 1988 MCC LEXIS 226 (Apr. 14, 1988) (initiating further study and consideration of proposal to modify *Ex Parte No. MC–177* policy).