**DELTA TRAFFIC SERVICE, INC. and Dudley Trucking Company, Inc., Plaintiffs,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., Defendant.**

Civ. A. No. J88–0099(L).

United States District Court, S.D. Mississippi, Jackson Division.

Nov. 4, 1988.

Robert B. Walker, Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, P.C., Washington, D.C., Donald B. Morrison, Robert L. McArty, Perry, Morrison & Smith, Jackson, Miss., for plaintiffs.

Frank D. Barber, Jackson, Miss., William P. Jackson, Jr., Pro Hac Vice, Jackson & Jessup, Arlington, Va., Jerome C. Finefrock, Armstrong World Industries Law Dept., Lancaster, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

Plaintiffs, Delta Traffic Service, Inc. (Delta Traffic) and Dudley Trucking Company, Inc. (Dudley), brought this action against Armstrong World Industries, Inc. (Armstrong) seeking to recover charges allegedly owed by Armstrong to Dudley for transportation services performed by Dudley. Armstrong has counterclaimed against plaintiffs alleging that Dudley fraudulently induced it to tender freight to Dudley in reliance upon misrepresentations regarding Dudley's tariff rates and that Dudley breached its contract by failing to file in its ICC tariff the rates it negotiated with Armstrong. Presently before the court is a motion by Armstrong for stay and referral to the Interstate Commerce Commission (ICC) and a separate motion by plaintiffs to dismiss defendant's counterclaim. The court has considered both motions and the memoranda of authorities together with attachments submitted by the parties and finds that Armstrong's motion should be denied and plaintiffs' motion granted.

The defendant Armstrong is a tile manufacturing concern located in Jackson, Mississippi. Dudley is a motor common carrier operating in interstate commerce pursuant to authority issued by the ICC. Delta is a freight audit company which claims an interest in this matter as the assignee of Dudley's accounts receivable. Between April 1985 and February 1986, Armstrong utilized Dudley's transportation service to transport tile from its plant in Jackson to several destinations both within and without the State of Mississippi. Prior to March 11, 1985, Dudley had maintained, in

its ICC tariff, discount rates applying to shipments of tile from Jackson to various points; those discount rates were, however, cancelled by Dudley effective March 11, 1985.[1]

According to Armstrong, in its negotiations with Dudley, Dudley agreed that the discount rates would be applicable to Armstrong's shipments and further agreed that it would legalize the rates negotiated for Armstrong's freight by filing them with the ICC. Subsequently, Dudley sent Armstrong a purported new tariff page which showed the institution of discount rates applicable to Armstrong's traffic. That page, issued in the name of Dudley's president, recited that it was issued on March 15, 1985 and became effective March 18, 1985. Armstrong avers that in reliance on the March 18 document which showed Dudley's compliance with its agreement to file the rates negotiated between Armstrong and Dudley, Armstrong tendered its freight to Dudley which accepted the freight and performed the transportation services agreed to.

Initially, Dudley billed Armstrong at the rates set out in the March 18 document and Armstrong paid those bills in full. When Dudley subsequently became bankrupt and Delta acquired Dudley's accounts receivable, Delta performed an audit on Dudley's freight bills in order to determine whether the freight bills had been paid and/or properly rated according to the tariffs filed by Dudley with the ICC. The audit revealed that Dudley had undercharged a number of shippers, including Armstrong, since the discount rates applicable to Dudley's handling of Armstrong freight had been cancelled by the March 11 filing with the ICC and the March 18 tariff page had never been filed by Dudley. Therefore, Dudley, along with Delta, claiming that the higher

rates on file with the ICC applied to Armstrong's shipment, sought to collect the undercharges.[2] At that time Armstrong discovered that Dudley's official tariff file at the ICC showed no evidence that the March 18 document had ever been filed.

In the present action, Dudley and Delta seek recovery of the undercharges; Armstrong has counterclaimed against plaintiffs for breach of contract, negligence and fraud. Armstrong has moved the court to stay this action and to refer certain of the issues to the ICC claiming that those issues are within the primary jurisdiction and expertise of the ICC. Specifically, Armstrong contends that two the ICC has primary jurisdiction over important issues in the present action. One issue is whether the attempts by Dudley and Delta to collect the alleged undercharges are "unreasonable practices" prohibited by 49 U.S.C. § 10701(a);[3] another is whether Dudley's tariff on file at the ICC requires Armstrong to pay any additional sums. Plaintiffs' motion for dismissal of Armstrong's counterclaim asserts that regardless of any negligent or improper conduct by Dudley in its dealings with Armstrong with reference to Dudley's shipping rates, Armstrong is legally required to pay the rates which were contained in Dudley's tariff on file with the ICC when the shipments were made. Resolution of both motions centers on 49 U.S.C. § 10761(a), historically referred to as the "filed rate" doctrine, which provides as follows:

[A] carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title shall provide the transportation or service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. *That carrier may not*

---

1. While Armstrong contests the effectiveness of the March 11 cancellation, that is not at issue on the present motions.

2. The undercharges represent the difference between the charges shown on Dudley's original freight bill and the charges shown on the corrected bills prepared by Delta based on the higher filed ICC rates.

3. The statute provides, in pertinent part, as follows:

 A rate (other than a rail rate), classification rule, or practice related to transportation or services provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must be reasonable.

 49 U.S.C. § 10701(a).

*charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.* (emphasis supplied)

Pursuant to this section, all interstate motor common carriers operating under the authority of the ICC are required to file tariffs with the ICC. Duly filed and published tariffs have the force of law such that the rate contained in a tariff becomes the legal rate and may not be modified by private agreement of the parties. *See Southern Pacific Co. v. Brown, Alcantar & Brown, Inc.*, 409 F.2d 1331 (5th Cir. 1969). The United States Supreme Court has consistently held that

> the rate of the carrier duly filed is the *only* lawful charge. Deviation from it is not permitted under any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and obviously may work hardship in some cases, but it embodies the policy which has been adopted by the Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Louisville and Nashville R.R. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915); *see also Square D. Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986) (unless or until suspended or set aside, published tariff rate is legal rate for all purposes as between carrier and shipper). The filed rate doctrine is so absolute that "the vast majority of cases where a shipper claims that a carrier intentionally or mistakenly misquoted and applied a rate inconsistent with the carrier's lawfully filed rate with the ICC hold that such is not a valid defense in an action at law to recover the legal tariff rate." *Delta Traffic Service, Inc. and Oneida Motor Freight, Inc. v.*

*Pride Health Care Equip.*, 1988 Fed.Carr. Cas. (CCH) ¶ 83,345 (N.D.Pa. Nov. 18, 1987). Thus, the shipper and common carrier may not agree on any rate other than the published tariff or filed rate. Even if the carrier charges the shipper a rate lower than the applicable tariff or if the carrier misquotes or misrepresents the applicable rate to the shipper either through mistake, inadvertence, or by fraudulent or intentional conduct, the carrier must collect the difference; where there is a variance between the filed rate and the negotiated rate, the shipper cannot claim relief from the filed rate by way of a defense or counterclaim predicated on the carrier's alleged negligent or intentional misquotation of rates. *See Inman Freight Systems, Inc. v. Olin Corp.*, 807 F.2d 117 (8th Cir.1986) (estoppel defense rejected as deviation from filed rate); *Louisville and Nashville R.R. v. Mead Johnson & Co.*, 737 F.2d 683 (7th Cir.1984), *cert. denied*, 469 U.S. 982, 105 S.Ct. 386, 83 L.Ed.2d 320 (misquotation of rate held not to bar recovery of undercharge); *Siegel v. Converters Transp., Inc.*, 714 F.2d 213 (2nd Cir.1983) (estoppel defense to collection of undercharge unavailable since strict liability exists for difference between rates paid by shipper and tariff filed by carrier); *Consolidated Freightways Corp. v. Terry Tuck, Inc.*, 612 F.2d 465 (9th Cir.), *cert. denied*, 447 U.S. 907, 100 S.Ct. 2990, 64 L.Ed.2d 856 (1980) (counterclaim for fraud dismissed).

In the case at bar, Armstrong's position is, in essence, that under the facts alleged, any attempt to collect the undercharges based on Dudley's filed rates would amount to an "unreasonable practice" within the primary jurisdiction of the ICC, since Dudley, in its negotiations with Armstrong, fraudulently or negligently misrepresented the applicable rates and conducted business with Armstrong on the basis of the negotiated rates rather than on the rates actually on file. In support of this position, Armstrong relies on a policy statement of the ICC issued in *Ex Parte* MC–177, *National Industries Transportation League—Petition to Institute Rule Making on Negotiated Common Carrier Rates*, 3 I.C.C.2d 99 (1986), in which the ICC addressed and gave an advisory opinion on the question of

"whether a shipper must pay the rate established in a tariff where a motor common carrier has negotiated a lower rate and has indicated that the negotiated rate would be the one charged (and therefore presumably filed as a tariff)." In *Ex Parte* No. MC–177, the ICC took the position that while courts are constrained by the filed rate doctrine to apply only the tariff rate, the ICC's jurisdiction over unreasonable practices allows it to consider all facts and circumstances surrounding an undercharge claim and gives it discretion to determine if the negotiated rate, not the filed rate, should be all that the carrier is permitted to collect.

This court is not bound by the policy statement of the ICC which, upon examination, appears contrary to and inconsistent with the provisions of 49 U.S.C. § 10761(a) and judicial interpretation of that statute. In fact, since the issuance of that statement by the ICC, a number of courts have questioned both the ICC's authority to issue *Ex Parte* No. MC–177 as well as the legal effect of any orders issued pursuant thereto. In *Miller v. Armour & Co. (In Re: Total Transportation, Inc.)*, 1988 Fed. Carr.Cas. (CCH) ¶ 83,369 (D.Minn.1988), the court stated that

> [i]t is enough for the Court to note that because it is bound by both statute and Supreme Court precedent to apply the filed rate doctrine it would be unable to accept any advisory opinion by the ICC that a shipper be permitted to avoid the filed rate doctrine through the assertion of equitable defenses. Both the Interstate Commerce and the Elkins Act require the carrier to charge and collect the filed rate. It simply cannot be an unreasonable practice for a carrier to do so, regardless of any private agreement to the contrary.

*Id.* at 58,114. Similarly, in *Cooper v. California Consolidated Enterprises, Inc. (In Re: California Motor Express, Inc.)*, 78 B.R. 773 (Bkrtcy.W.D.N.C.1987), the court held that *Ex Parte* No. MC–177

> constitutes, at most, an invitation for courts to refer unreasonable practice cases for analysis. The Commission readily admits that consistent with the statutory scheme, the Court retains its

authority to set the remedy and accept or reject the Commission's conclusions.

In *INF, Ltd. v. Spectro Alloys Corp.*, 690 F.Supp. 808 (D.Minn.1988), the court had initially referred cases similar to the present case to the ICC based on its conclusion that the issues were subject to the primary jurisdiction of the ICC. *See INF, Ltd. v. Spectro Alloys Corp.*, 651 F.Supp. 1405 (D.Minn.1987). Although the ICC, upon referral, considered the facts and opined that the collection of undercharges would be unreasonable, the court refused to confirm the decision of the ICC stating as follows:

> Nevertheless, after giving thorough consideration to the ICC's decision, the court determines that it remains bound by the "filed rate" doctrine established by Congress and the Supreme Court.
>
> Neither Congress nor any federal court has seen fit to mitigate the sometimes harsh effects of the filed rate doctrine by allowing equitable defenses. Accordingly, this court must strictly apply the filed rate doctrine and disallow Spectro's equitable defenses, despite the ICC's decision.

At 810 (footnotes and citations omitted).

The court is of the opinion that the filed rate doctrine remains mandatory, notwithstanding the ICC's policy statement in *Ex Parte* No. MC–177. Accordingly, this court is bound by that doctrine. The question remains whether defendant has raised any issue in defense of plaintiffs' attempt to collect undercharges which could be said to be within the primary jurisdiction of the ICC or which is viable despite the filed rate doctrine.

It has been held that the doctrine of primary jurisdiction

> is not applicable where the issue, regardless of its complexity, is not the reasonableness of the rate or rule, but a violation of such rate or rule. Thus, it has been continuously asserted that the courts have original jurisdiction to interpret tariffs, rules and practices where the issue is one of violation, rather than reasonableness.

*Civil Aeronautics Bd. v. Modern Air Transport*, 179 F.2d 622, 624 (2d Cir.1950).

In the case at bar, although Armstrong has made a conclusory allegation in its answer that the rates filed in Dudley's tariff were unreasonable, it has presented no evidence in support of that claim. In *Oneida Motor Freight, Inc. v. The Ormond Shops*, No. 87–4821, —— F.Supp. ——, (D.N.J. January 11, 1988), the court denied referral to the ICC stating that "while defendants have identified with specificity practices it claims were unreasonable, they have failed to specify or substantiate in any way their allegation that the tariff in question was unreasonable." slip op. at 38 (citations omitted). Further, in this case as in *Feldspar Trucking Company, Inc. v. Greater Atlantic Shippers Association, Inc.*, 1988 Fed.Carr.Cas. (CCH) ¶ 83,350 (N.D.Ga. 1987),

> the defendant's real objection is that the collection of the undercharges would be inequitable. If defendant has specific objections to the reasonableness of the tariff, as opposed to the reasonableness of the application of the tariff, the defendant should file a complaint with the ICC pursuant to 49 U.S.C. § 11701.

*Id.* at 58,021.

■ As an additional basis for referral, Armstrong claims that Dudley's tariff on file with the ICC was confusing and ambiguous because of conflicting symbolization. It contends that the issue of which of the conflicting symbolizations of the tariff controls is within the primary jurisdiction and expertise of the ICC and that referral should therefore be ordered. *See* 49 C.F.R. § 1312.13(1) (1986) (reference marks, abbreviations and note references in tariff shall be explained and use shall be consistent throughout tariff unless deviation specifically explained). The court has reviewed the tariff and finds Armstrong's challenge on the basis of ambiguity to be lacking in merit. There is insufficient evidence that the tariff is confusing or subject to differing interpretations such that the technical expertise of the ICC is needed. Based on the foregoing, the court is of the opinion that Armstrong's motion for a stay and referral to the ICC should be denied. There has been no showing that any of the issues raised is properly within the primary jurisdiction of the ICC nor that any determination by the ICC would be helpful to the court in the case at bar.

Based on the foregoing, it is also clear that plaintiffs' motion to dismiss Armstrong's counterclaim should be granted. The counterclaim consists of various equitable defenses to payment of the undercharges claimed to be owing by plaintiffs. As discussed above, the filed rate doctrine does not permit application of equitable defenses and, despite the ICC's advisory opinion in *Ex Parte* MC–177 opining that equitable defenses may be available in certain cases, it nevertheless appears to be the law of the Supreme Court that application of the filed rate doctrine is mandatory and is without exception for equitable defenses. The court would also note that Armstrong's effort to characterize its claims as anything other than equitable defenses is merely an attempt to force referral to the ICC to circumvent application of the filed rate doctrine and avoid payment of the undercharges. Under binding precedent, the court concludes that the counterclaim cannot stand.

Accordingly, it is ordered that plaintiffs' motion is granted and defendant's motion is denied.