DELTA TRAFFIC SERVICE, INC., an Oregon Corporation, Plaintiff,

v.

MARINE LUMBER CO., an Oregon Corporation, Defendant.

WEST COAST TRUCK LINES, INC., an Oregon Corporation, Plaintiff,

v.

WEYERHAEUSER COMPANY, a Washington Corporation, Defendant (Two Cases).

Civ. Nos. 86–1124–MA, 87–689–MA and 88–369–MA.

United States District Court, D. Oregon.

Jan. 24, 1989.

Miles L. Kavaller, Beverly Hills, Cal., Dale H. Schofield, Portland, Or., for plaintiffs.

William N. Mehlhaf, Case, Dusterhoff & Mehlhaf, Portland, Or., for defendants.

### OPINION

MARSH, District Judge.

Plaintiff West Coast Truck Lines, Inc. (West Coast) formerly was a motor com-

mon carrier subject to regulation by the Interstate Commerce Commission (ICC or Commission). West Coast ceased operations late in 1985. Plaintiff Delta Traffic Service, Inc. is a collection agency to which West Coast assigned certain accounts. Defendants Marine Lumber Co. (Marine) and Weyerhaeuser Co. (Weyerhaeuser) are former West Coast shipping customers.

Plaintiffs move for summary judgment seeking payment of freight undercharges of $14,948.33 from Marine and $16,941.82 from Weyerhaeuser. Defendants move for summary judgment seeking to enforce the decision of the ICC that collection of the undercharges would be an unreasonable practice under the Interstate Commerce Act. For the reasons set forth below, defendants' motions for summary judgment are granted and plaintiffs' motions for summary judgment are denied.

## BACKGROUND

Between September, 1983 and December, 1984, Marine and West Coast representatives negotiated oral contracts for 108 interstate shipments. The negotiated rates were not filed with the ICC. Marine's representative did not compare the negotiated rates against any filed rate. Bills sent to Marine after the transportation services were rendered reflect the negotiated rate. Marine paid the bills in full and West Coast accepted payment without claiming a deficiency.[1]

Similarly during 1984 and 1985, Weyerhaeuser and West Coast representatives negotiated oral contracts for over 100 shipments. The negotiated rates were never filed with the ICC and Weyerhauser's representative did not compare them with any filed rates. Weyerhauser was billed accordingly. West Coast accepted payment without claiming a deficiency.

On October 23, 1987, I adopted Magistrate Dale's Findings and Recommendations in Civil No. 86–112–DA, granting Marine's motion to refer the matter to the ICC

for an initial determination of the reasonableness of plaintiffs' negotiated rate practice. See Delta Traffic Serv., Inc. v. Marine Lumber Co., 683 F.Supp. 754 (D.Or. 1987). Following the referral of Delta, the parties stipulated to stay the proceedings in two companion cases against Weyerhaeuser, and refer them to the ICC (Civil No. 87–689–MA and 88–369–MA).[2]

On December 28, 1987, a Joint Petition for Declaratory Order was filed in all three cases by Marine and Weyerhaeuser before the ICC. On June 20, 1988, the ICC in Marine Lumber Co. and Weyerhaeuser Co.—Joint Petition for Declaratory Order, No. MC–C–30082 (ICC June 20, 1988), unanimously found that collection of undercharges by West Coast and Delta would constitute an unreasonable practice.

## STANDARDS

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate if the pleadings and supporting materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact where the non-moving party fails to "establish the existence of an essential element to the party's case, on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir.1987) cert. denied, —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

## DISCUSSION

In order to determine the propriety of summary judgment in this matter, it is necessary to understand the ICC's current position on its unreasonable practice jurisdiction under 49 U.S.C. §§ 10701(a) and 10704. It is also necessary to evaluate how that asserted jurisdiction intertwines with

---

1. The alleged deficiencies were not claimed until Delta, as assignee of West Coast, audited West Coast's freight bills and thereafter pursued the collection of the contested accounts.

2. On October 18, 1988, the three cases were consolidated for all proceedings in this court.

the tariff restrictions set forth in 49 U.S.C. § 10761(a).

49 U.S.C. § 10701 provides:

(a) A rate (other than a rail rate), classification, rule, or practice related to transportation or service provided by a carrier subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title must be reasonable.

49 U.S.C. § 10704 provides:

(a)(1) When the Interstate Commerce Commission, after a full hearing, decides that a rate charged or collected by a carrier for transportation ... will violate this subtitle, the Commission may prescribe the rate.... The Commission may order the carrier to stop the violation.

49 U.S.C. § 10761 provides:

(a) Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title shall provide that transportation or service only if the rate for the transportation or service is contained in a tariff [3] that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device.

In *National Indus. Transp. League— Petition for the Institution on Negotiated Motor Common Carrier Rates,* Ex Parte No. MC–177 (October 29, 1986) (*Negotiated Rates*), the Commission held that despite the restriction set forth in § 10761, requiring a motor common carrier to collect the rate published in its tariff, the ICC nevertheless could declare certain rate negotiation practices unreasonable and prevent the collection of the tariff rate. Specifically, the Commission held that it has "the authority to consider all the circumstances

surrounding an undercharge suit" and that it need not ignore equitable defenses raised by a shipper against a filed rate. In reaching this conclusion, the Commission specifically relied upon *Seaboard System R.R. Inc. v. United States,* 794 F.2d 635 (11th Cir.1986).

In *Seaboard,* the issue before the court was whether to affirm the ICC's determination that it was an unreasonable practice for the carrier to collect its tariff rate when the carrier and shipper agreed upon a lower rate. *Id.* at 636. The court affirmed the ICC decision, noting that although the decision marked a change from past practice, it was not contrary to statute and was within the Commission's authority pursuant to §§ 10701(a) and 10704. *Id.* at 637. In so holding, the court stated:

As the Commission recognized, the courts have long refused to recognize carrier rate misquotations as a defense against legal actions by carriers seeking to collect undercharges. The seminal case was decided almost three quarters of a century ago and would seem to travelers today to have reached a curious result. * * *

The Commission acknowledged in its order that it too historically has refused to order the waiver of undercharges based on carrier rate misquotations, because granting such relief might lead to intentional "misquotations" by carriers seeking to discriminate in favor of particular shippers. Nonetheless, the courts have never held that the Commission lacks authority to prohibit the unreasonable collection of undercharges. * * * [F]inding a carrier practice unreasonable is the kind of determination that lies in the primary jurisdiction of the Commission.

*Id.* at 638 (citations omitted).

Several district and bankruptcy court cases have since struggled with the issue of whether the courts should permit equitable defenses to be raised against the payment of a tariff rate in accordance with

---

**3.** A tariff is the document "a motor common carrier [must] publish and file with the Commission ... containing the rates for transporta-

tion it may provide under this subtitle." 49 U.S.C. § 10762(a)(1).

the current position of the Commission. Because *Seaboard* involved the review of an ICC decision which originated with the Commission, as opposed to a case originating in the courts and subsequently referred to the ICC, it is not necessarily definitive.[4] Accordingly, I have reviewed the district and bankruptcy court cases which have addressed this issue.[5]

All of the courts addressing the issue recognize that the traditional rule has been that equitable defenses may not be raised against a collection action for a filed rate. This rule is referred to as the filed rate doctrine. *See Louisville & Nashville R.R. Co. v. Maxwell*, 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915). The courts disagree, however, as to whether the rule should continue to be strictly applied in light of the changed circumstances in the industry as well as the change in policy announced by the ICC.

Of the district and bankruptcy courts which have strictly enforced the filed rate doctrine and refused to consider equitable defenses, the decisions stress that (1) the filed rate doctrine is well-established and supported by Supreme Court precedent; (2) *Seaboard*, the only circuit court opinion in this area, is distinguishable; (3) *Square D. Co. v. Niagara Frontier Tariff Bureau*, 476 U.S. 409, 106 S.Ct. 1922, 90 L.Ed.2d 413 (1986), affirms that despite Congress' knowledge of the filed rate doctrine, Congress did not amend § 10761 in the Motor Carrier Act of 1980 to lessen its harsh affects. *See Delta Traffic Serv., Inc. v. APPCO Paper & Plastics Corp.*, No. CV-87-2325 (E.D.N.Y. Nov. 2, 1988) [1988 WL 127528] (1988 U.S.Dist. LEXIS 13306); *INF, Ltd. v. Spectro Alloys Corp.*, 690 F.Supp. 808 (D.Minn.1988); *In re: Total Transp., Inc. v. Armour & Co.*, 84 B.R.

590 (D.Minn.1988); *Delta Traffic Serv. v. Georgia–Pacific Corp.*, 684 F.Supp. 769 (D.Conn.1987); *Feldspar Trucking Co. v. Greater Atlantic Shippers Assoc. Inc.*, 683 F.Supp. 1375 (N.D.Ga.1987); *Motor Carrier Audit & Collection Co. v. United Food Serv. Inc.*, No. 87–C–298 (D.Colo. May 4, 1987) [1987WL19008] (1987 U.S.Dist. LEXIS 13659); *Rebel Motor Freight, Inc. v. Southern Beverage Co., Inc.*, 673 F.Supp. 785 (M.D.La.1987).

In contrast, of those courts enforcing the ICC's new policy and allowing equitable defenses, the decisions focus on (1) the ICC's unreasonable practice jurisdiction and expertise; (2) the need for flexibility to carry out the intent of the national transportation policy and spirit of the Motor Carrier Act of 1980; (3) the fact that the ICC's new policy does not offend § 10761(a) but merely affects remedies; (4) the fact that *Square D* is distinguishable in that it did not involve the assertion of equitable defenses to a claim for undercharges; and (5) the fact that both the filed rate doctrine and reasonable practice doctrine are mandated by statute and one cannot be allowed to dominate the other. *See Delta Traffic Serv. Inc. v. Knight–Ridder Newspaper Sales, Inc.*, 691 F.Supp. 339 (N.D.Ga.1988); *Maislin Indust., U.S., Inc. v. Primary Steel, Inc.*, 705 F.Supp. 1401 (W.D.Mo.1988); *In re: Tucker Freight Lines, Inc. v. United Exposition Serv. Inc.*, 85 B.R. 426 (W.D.Mich.1988).

■ I find the reasoning in the latter cases persuasive. The decision rendered in *Negotiated Rates* amply demonstrates that the Commission was well aware of the objections raised to its intended course and of the jurisdictional issues involved. Its self-determined authority and justification were based in large part on *Seaboard*.

---

4. The *Seaboard* Court noted this distinction, holding that the Commission's action was not contrary to the Supreme Court's recognition of the filed rate doctrine because those cases "dealt only with the *courts'* authority to grant equitable defenses to undercharge actions." 794 F.2d at 638 (emphasis in original).

5. No circuit court has directly addressed the circumstances in this case. In *West Coast Truck Lines v. Arcata Community Recycling*, the Ninth Circuit acknowledged the existence of the ICC's new policy but did not decide whether the policy accords with the Commission's statutory authority. 846 F.2d 1239, 1240 n. 3 (9th Cir.), *cert. denied* — U.S. —, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

The Commission noted the limitations inherent in its new policy and specifically stated that the policy should be applied on a case-by-case basis weighed against the purposes of the filed rate doctrine. In my view, the change of policy is a commendable step taken by the ICC to remove the harshness of the doctrine in circumstances such as this case. The filed rate doctrine's integrity of preventing underlying discrimination has been maintained.

 Moreover, I conclude that the ICC is not prohibited from changing its enforcement policy of unreasonable practices pursuant to 49 U.S.C. § 10701(a). "The courts have never held that the Commission lacks authority to prohibit the unreasonable collection of undercharges." *Seaboard,* 794 F.2d at 638. The ICC's change in policy and consideration of equitable defenses in this case was justified and consistent with its jurisdiction under the Act.

Finally, I hold that the policy change of the Commission is worthy of recognition in the courts in its limited application. While *Seaboard* was a review of a case instituted in the ICC, I find the reasoning to be equally applicable and persuasive. I therefore decline to apply the filed rate doctrine to these facts and find that the circumstances of this case warrant defendants' equitable defenses. I now address the issue of whether the decision of the Commission is supported by substantial evidence.

A district court's scope of review of a decision of the ICC is limited to a determination of whether the findings are contrary to law, arbitrary, capricious or unsupported by substantial evidence. *See McLean Trucking Co. v. United States,* 387 F.2d 657, 181 Ct.Cl. 170 (1967); *A. Lindberg & Sons, Inc. v. United States,* 408 F.Supp. 1032 (D.C.Mich.1976). "When the ICC resolves a question within its primary jurisdiction the Commission's final determination should be accorded substantial deference and should not be set aside unless it exceeds the ICC's statutory authority or is unsupported by substantial evidence". *Maislin Industries,* —— F.Supp. ——.

Substantial evidence is defined as "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Illinois Central R. Co. v. Norfolk & W. Ry. Co.,* 385 U.S. 57, 66, 87 S.Ct. 255, 260, 17 L.Ed.2d 162 (1966). A court may not substitute its own conclusions for those fairly drawn by the Commission from the evidence. *Illinois Central R. Co.,* 385 U.S. at 69, 87 S.Ct. at 262. Further, the possibility of drawing two different inferences from the evidence does not mean the Commission's findings are unsupported by substantial evidence. *See American Textile Mfrs., Inst. v. Donovan,* 452 U.S. 490, 523, 101 S.Ct. 2478, 2497, 69 L.Ed.2d 185 (1981); *A. Lindberg & Sons,* 408 F.Supp. at 1037.

 Plaintiffs argue that the ICC decision is not supported by the weight of the evidence. Specifically, they argue, as they did before the ICC, that neither defendant demonstrated reasonable reliance on the rate quotation.

The ICC found that the evidence sufficiently demonstrates that defendants reasonably relied on plaintiffs' representative quoted rate and that collection of the published tariff rate would be an unreasonable practice. Specifically, they found that (1) both shippers had available cheaper rates from other carriers and would undoubtedly have used these other carriers had they known that plaintiffs intended to apply a rate higher than the rate negotiated; (2) the evidence demonstrated that plaintiffs billed defendants at the quoted rates on many occasions and never indicated a problem with the rates; (3) there was no convincing evidence that defendants had knowledge that a tariff had not been filed with the Commission to cover the shipments at issue; and (4) plaintiffs' conduct was intended to, and did in fact, induce defendants to tender it traffic in erroneous reliance on a rate that was not published.

I find that the ICC's opinion was based on substantial evidence and constitutes a thorough examination of the issues. I do not agree with plaintiffs' assertion that the ICC automatically found that the shipper representatives reasonably relied on the rate quotations of the carrier's representa-

**518**

tives. *See Robinson Truck Lines, Inc. v. Baldor Electric Co.*, 89 B.R. 584, 592 (N.D. Miss.1988).

In conclusion, I find that the Commission's determination that a negotiated rate existed and that the collection of the alleged undercharges would be an unreasonable and unlawful practice is supported by substantial evidence. I adopt the ICC's findings of fact and decision. The stays in these cases are lifted. Defendants' motions for summary judgment (11, 12 and 47) are GRANTED and plaintiffs' motions for summary judgment (8, 9 and 44) are DENIED.