**Scott N. BROWN, Jr., Trustee for Express Transportation Company, Inc., Plaintiff,**

v.

**ASSOCIATED DISTRIBUTORS, INC., Defendant.**

**Civ. A. No. 89–143–N.**

United States District Court, E.D. Virginia, Norfolk Division.

June 4, 1989.

**730**

John R. Sims, Jr., Sims, Walker & Steinfeld, P.C., Great Falls, Va., Joseph L. Steinfeld, Jr., Robert B. Walker, Sims, Walker & Steinfeld, P.C., Washington, D.C., for plaintiff.

Linda S. Laibstain, Hofheimer, Nusbaum, McPhaul & Samuels, Norfolk, Va., for defendant.

## ORDER STAYING CASE AND REFERRING TO ICC

DOUMAR, District Judge.

This is an action to recover alleged motor common carrier freight undercharges. The trustee in bankruptcy for Express Transportation alleges that Express Transportation undercharged Associated Distributors, a wine distributor, a total of $59,493.10 for freight transportation. Pursuant to the filed rate doctrine, the trustee seeks this amount as still owing under the applicable tariff rates and rules filed by Express Transportation with the Interstate Commerce Commission (ICC).

Associated Distributors has responded with a general denial of any amount owed and has advanced misrepresentation and fraud on the part of Express Transportation as equitable defenses.[1] Associated Distributors has moved for a stay of this action and referral to the ICC for an administrative determination of whether collection of the undercharges alleged by the trustee would constitute an unreasonable carrier practice under 49 U.S.C.S. § 10701(a) (Law. Co-op Supp.1988). For the reasons that follow, Associated Distributors' motion for stay and referral is GRANTED.

## I. BACKGROUND

The pleadings and affidavits in support of Associated Distributors' motion set forth that Express Transportation is a closely-held Tennessee corporation, headquartered in Chattanooga, Tennessee. Express Transportation is currently in chapter 7 bankruptcy liquidation proceedings in the United States Bankruptcy Court for the Eastern District of Tennessee. The plaintiff in this action is the trustee in bankruptcy.

Initially, Express Transportation engaged only in local cartage. Following motor carrier deregulation, Express Transportation expanded its operations to handle interstate shipments of general commodities, specializing in transportation between the West Coast and the Southeast. Express Transportation received authority issued by the ICC to operate as a motor common carrier in interstate commerce.

Sometime in 1984, a salesperson for Express Transportation, Richard Bruce, solicited business from the executive vice president of Associated Distributors, Allan Segal. Bruce provided Segal with Express Transportation rate schedules, which included shipment rates by case quantities for transportation of wine from California to the "Norfolk area." Bruce also purportedly provided Segal with documents repre-

---

**1.** Pursuant to discussion at oral argument, the Court grants the defendant leave to file an amended complaint, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, pleading fraud, in conformity with Rule 9(b), as an offset.

sented to be Express Transportation's published tariffs. Segal states that Bruce related to him that the president and sole shareholder of Express Transportation, John Limerick, Jr., had established the shipment rates and that they were proper in all respects.

Bruce has submitted an affidavit attesting that Limerick decided the types of freight that Express Transportation wished to haul, prepared rate schedules for that freight and made arrangements with the Chattanooga Freight Bureau to prepare, publish, and register those rates with the ICC. According to Bruce, all of the Express Transportation salespersons were given copies of the tariffs by Limerick and were instructed to solicit freight transportation at the rates thereon. Bruce relates that it was these tariffs, represented by Limerick to be proper in all respects, that he and the other salespersons used to solicit business from Associated Distributors and other customers and potential customers.

In reliance on the rate schedule and representations by Bruce, Associated Distributors utilized Express Transportation for freight shipments from early 1985 through the fall of 1987. Associated Distributors received and paid Express Transportation's freight invoices for each shipment. During the course of the trustee's audit of Express Transportation's freight bills to Associated Distributors, alleged undercharges from the applicable tariff rates totaling $59,-493.10 were discovered. This action followed.

## II. DISCUSSION

It is not necessary to relate here the long history of the filed rate doctrine or to recite all of the undercharge cases and their varying responses to the ICC's by now famous policy statement in *National Industrial Transportation League—Petition to Institute Rulemaking on Negotiated Motor Common Carrier Rates*, 3 I.C.C.2d 99, 1986 Fed.Carr.Cas. (CCH) ¶ 37, 284, at 47, 348 (1986). Both are thoroughly discussed in *Orscheln Brothers Truck Lines, Inc. v. Zenith Electric Corp.*, 708 F.Supp. 845

1989 Fed.Carr.Cas. (CCH) ¶ 83, 428, at 58, 303, 58, 311–58, 317 (N.D.Ill.1988), and in *Motor Carrier Audit & Collection Co. v. Family Dollar Stores, Inc.*, 670 F.Supp. 644, 645–649 (W.D.N.C.1987).

The Court finds that referral of this case to the ICC is proper for two reasons. First, the undercharge, and indeed even Associated Distributors' utilization of Express Transportation, perhaps arose from deliberate fraud by Express Transportation. This Court is not in the business of enforcing debts procured by fraud.

Secondly, referral of this case is appropriate because should the ICC find collection of the alleged undercharges an unreasonable carrier practice in the circumstances of this case, such a finding may well be sustainable by this Court. This case differs significantly from the two cases cited by the trustee where the district courts did not sustain ICC findings of unreasonable practice in collecting undercharges. This case is not a rate misclassification case as was *INF, Ltd. v. Spectro Alloys Corp.*, 690 F.Supp. 808 (D.Minn.1988) (summary judgment granted to carrier despite ICC finding that collecting undercharge constituted unreasonable practice). Nor does this case present the discriminatory pricing concerns which the court in *Orscheln Brothers* found fatal to the ICC's finding of an unreasonable practice in collecting negotiated rate undercharges. *See* 1989 Fed.Carr. Cas. at 58, 312–58, 317. *Orscheln Brothers* is the paradigm negotiated rate case where an individual shipper and an individual carrier negotiate a rate for a shipment or shipments of freight, which the carrier then fails to file. In contradistinction to that case, the evidence here suggests that Express Transportation fraudulently offered its below-tariff rates to all of its customers.

With the recent spate of motor carrier bankruptcies, the number of undercharge cases has proliferated. *See National Industrial Transportation League–Petition for a Declaratory Order on Negotiated Motor Common Carrier Rates*, 1988 MCC LEXIS 226, at 1 (ICC 1988) (over 1,000 rate undercharge cases have recently been filed

in the McLean Trucking Company bankruptcy matter alone). In this context the ICC is further evolving its regulatory stance towards undercharge cases, *see id.*, and cracks may be appearing in the filed rate doctrine armor. In such a climate, referral of this case to the ICC based upon its primary jurisdiction over common motor carrier rates and practices is particularly appropriate.

## III. CONCLUSION AND ORDER

Finding stay and referral of this action to the ICC appropriate, Associated Distributors' motion is GRANTED. It is hereby ORDERED that this case be stayed while on referral to the ICC. This Court will retain jurisdiction over the case in order to review any advisory opinion rendered by the ICC.

IT IS SO ORDERED.